Lucce v. Blanche

BIA
Schultz, IJ
A062 348 065

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of July, two thousand twenty-six.

PRESENT:
> JON O. NEWMAN,
> MICHAEL H. PARK,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

_____

KARL HENRY LUCCE,
> *Petitioner,*

v.                                                                              **25-1324**
                                                                                **NAC**

TODD BLANCHE, ACTING UNITED
STATES ATTORNEY GENERAL,
> *Respondent.*

_____

**FOR PETITIONER:**                    Kerry Q. Battenfeld, Jess K. Grover, Karen
                                       Murtagh, Krin Flaherty, Prisoners' Legal
                                       Services of New York, Buffalo, NY.

**FOR RESPONDENT:**                    Brett A. Shumate, Assistant Attorney General;
                                       Cindy S. Ferrier, Assistant Director; Tracie N.
                                       Jones, Trial Attorney, Office of Immigration
                                       Litigation, Civil Division, United States
                                       Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of

Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND

DECREED that the petition for review is DENIED.

Petitioner Karl Henry Lucce, a native and citizen of Haiti, seeks review of a

May 1, 2025, decision of the BIA affirming an October 31, 2024, decision of an

Immigration Judge ("IJ") denying relief under the Convention Against Torture

("CAT"). *In re Karl Henry Lucce*, No. A062 348 065 (B.I.A. May 1, 2025), *aff'g* No.

A062 348 065 (Immig. Ct. Batavia Oct. 31, 2024). We assume the parties' familiarity

with the underlying facts and procedural history in this case.

We have reviewed the IJ's decision as supplemented by the BIA. *See Yan*

*Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review factual findings

related to the denial of CAT relief under the substantial evidence standard. *See*

*Nasrallah v. Barr*, 590 U.S. 573, 584 (2020). "[T]he administrative findings of fact

2

are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Quintanilla-Mejia v. Garland*, 3 F.4th 569, 583 (2d Cir. 2021).[1]

A CAT applicant has the burden to show that he "more likely than not would be tortured by, or with the acquiescence of, government officials acting in an official capacity." *Quintanilla-Mejia*, 3 F.4th at 592 (quotation marks omitted); *see* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). A CAT claim thus involves a "two-step inquiry," requiring a showing of both likely torture and "sufficient state action." *Garcia-Aranda v. Garland*, 53 F.4th 752, 758–59 (2d Cir. 2022).

More likely than not means "that there is greater than a fifty percent chance . . . that [the applicant] will be tortured." *Mu-Xing Wang v. Ashcroft*, 320 F.3d 130, 144 n.20 (2d Cir. 2003). In assessing whether an applicant has met his burden of proof, the agency must consider all evidence relevant to future torture, including

---

[1] To the extent that review involves the application of law to fact, we recognize the tension between our prior cases holding that we review that application *de novo*, *see Quintanilla-Mejia*, 3 F.4th at 583, and *Urias-Orellana v. Bondi*, 607 U.S. 537, 545–50 (2026), which, in addressing a determination regarding past persecution, held that substantial evidence review applies to both fact-finding and the application of law to fact. We need not resolve the tension here, as the dispositive issue here is the likelihood of future torture, which is a factual determination. *See Hui Lin Huang v. Holder*, 677 F.3d 130, 134 (2d Cir. 2012).

"[e]vidence of past torture inflicted upon the applicant," "[e]vidence that the applicant could relocate to a part of the country of removal where he . . . is not likely to be tortured," "[e]vidence of gross, flagrant or mass violations of human rights within the country of removal," and "[o]ther relevant information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3). A CAT applicant must present "particularized evidence" that he would be subject to torture; generalized country conditions are not sufficient. *Mu Xiang Lin v. U.S. Dep't of Just.*, 432 F.3d 156, 158 (2d Cir. 2005). Whether an applicant meets this threshold "must be considered in terms of the aggregate risk of torture from all sources, and not as separate, divisible claims." *Matter of J-R-G-P-*, 27 I. & N. Dec. 482, 484 (B.I.A. 2018) (quotation marks and ellipsis omitted).

Lucce alleged past torture in 2014 by Baz Pilate guerrillas (a de facto gang comprised of former police officers who work with the Haitian police to combat gangs) and a fear of future torture based on three theories: (1) the same Baz Pilate members who assaulted him in 2014 would find him and try to kill him again; (2) Haitian police and vigilante groups, Baz Pilate, or other gangs would torture him as a criminal deportee or as a misidentified gang member based on his tattoos, dreadlocks, and facial scarring; and (3) the stigma against the mentally ill and the

4

inadequacy of Haiti's healthcare system would deprive him of medication, all of which would severely worsen his mental-health conditions, and he would therefore likely be detained either in conditions amounting to torture or where he would be singled out for torture because of his deteriorating mental health.

## I.     Acquiescence to Torture

Lucce argues that the IJ failed to make a specific finding of government acquiescence to torture by Baz Pilate and that the BIA engaged in impermissible fact-finding by affirming a nonexistent acquiescence finding. But the IJ was not required to make an acquiescence finding after determining that Lucce failed to meet his burden of proof at the first step of the CAT inquiry: likelihood of future torture. *See Garcia-Aranda*, 53 F.4th at 758–59.

Lucce additionally asserts that the likelihood finding is infected by the BIA's impermissible acquiescence finding in relation to past torture by Baz Pilate. In affirming that there was no past torture, the BIA stated that it "affirm[s] the determination that [Lucce] has not shown the level of harm and acquiescence of a public official necessary to establish 'torture' within the meaning of 8 C.F.R. § 1208.18(a)." Certified Administrative Record ("CAR") at 4. As Lucce points out, the IJ's past-torture finding was based solely on the severity of harm, so there was

no acquiescence finding for the BIA to affirm. The BIA is not permitted to find facts on appeal; it is limited to reviewing the IJ's findings of fact for clear error. 8 C.F.R. § 1003.1(d)(3)(i). Accordingly, the BIA erred to the extent it relied on a failure to establish acquiescence to affirm the IJ's finding of no past torture. However, we conclude that the error is harmless under the circumstances because the BIA also relied on Lucce's failure to "show[] the level of harm . . . necessary to establish 'torture,'" CAR at 4, and there is no indication the BIA would reach a different result as to severity of harm on remand. *See Cao He Lin v. U.S. Dep't of Just.*, 428 F.3d 391, 401 (2d Cir. 2005) (holding that errors do not require remand when "there is no realistic possibility that, absent the errors, the IJ or BIA would have reached a different conclusion").

## II. Likelihood of Future Torture

The record does not compel the conclusion that Lucce is more likely than not to be tortured. *See Quintanilla-Mejia*, 3 F.4th at 592–93 (holding that a petitioner "cannot secure CAT relief by pointing to conflicting evidence that might support— but not compel—a different conclusion"); *Hui Lin Huang*, 677 F.3d at 134 (explaining that "[a] determination of what will occur in the future and the degree of likelihood of the occurrence has been regularly regarded as fact-finding").

6

"[W]e presume that [the agency] has taken into account all of the evidence before [it], unless the record compellingly suggests otherwise." *Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 336 n.17 (2d Cir. 2006).

First, Lucce argues that the agency's erroneous past-torture finding undermined its analysis of future torture. However, the IJ acknowledged the severity of the harm, noted that Lucce was stabbed with an ice pick and beaten until he was unconscious, and deemed the attacks "reprehensible." CAR at 83. Further, as noted above, even though the IJ concluded that these past attacks were not sufficiently severe to constitute past torture, the IJ and BIA considered that the attacks had occurred when assessing the likelihood of future torture.

Second, Lucce argues that the agency ignored material evidence when assessing his likelihood of future torture. The record does not compel this conclusion. *See Xiao Ji Chen*, 471 F.3d at 336 n.17; *Quintanilla-Mejia*, 3 F.4th at 592–93. Contrary to Lucce's position, the IJ acknowledged Lucce's testimony that "friends" told him that Baz Pilate was still searching for him, but noted that he had not corroborated the assertion. CAR at 84. And although he alleged that a similarly situated friend was killed by Baz Pilate, his testimony was not so clear, as he stated that he believed this friend, whose last name he did not know, was

7

killed by Baz Pilate but then testified that he "[didn't] really know how [the friend] was killed because [he] was [in the United States]." *Id.* at 306. Given the lack of support for these allegations, the 10 years that had passed between the attacks and the hearing, Lucce's lack of contact with Baz Pilate since the attacks, and the absence of evidence about how Baz Pilate would discover his return to Haiti, the agency reasonably concluded that his fear of torture on this basis was speculative. *See Jian Xing Huang v. U.S. INS*, 421 F.3d 125, 129 (2d Cir. 2005) ("In the absence of solid support in the record . . . [an applicant's] fear is speculative at best.").

Additionally, Lucce claims that the IJ ignored his testimony that he will be targeted because he has tattoos and dreadlocks and is a deportee with scars on his face. However, the IJ acknowledged Lucce's scars and evidence that "*some individuals with a locs hairstyle and tattoos have been targeted for harm as suspected gang members civilians [sic] in the Bwa Kale movement.*" CAR at 83, 85. Therefore, the record does not compellingly suggest that the IJ overlooked this evidence. *See Xiao Ji Chen*, 471 F.3d at 336 n.17. Lucce has not identified other evidence that the IJ overlooked, and his general evidence of country conditions does not establish that he would more likely than not be singled out for torture based on these characteristics. *See Mu Xiang Lin*, 432 F.3d at 158.

8

Lucce also claims that the IJ "failed to consider individualized evidence of [his] mental health disabilities . . . in conjunction with record evidence demonstrating pervasive discrimination and stigma against persons suffering from mental illness." Petitioner's Br. at 44. He argues that this evidence of "pervasive discrimination" is "circumstantial evidence that harmful institutional conditions are specifically intended to torture detainees with those disabilities." Petitioner's Reply Br. at 9 (italics omitted). However, he does not point to evidence to support this statement other than stating that the evidence of discrimination itself constitutes circumstantial evidence of intent to torture. The record reflects widespread discrimination against the mentally ill in Haiti, dire conditions in prisons and psychiatric facilities, and that "prisoners [have been] subject to torture and other cruel, inhuman, and degrading treatment in prisons and makeshift detention centers." CAR at 1068. The United Nations Integrated Office in Haiti and Office of the High Commissioner for Human Rights "found the use of cruel, inhuman, and degrading treatment, sometimes amounting to torture, was widespread as a disciplinary measure throughout the prison system." *Id.* at 1069. However, the IJ acknowledged the hardship that Lucce would face, including inadequate healthcare, and dire conditions in prisons and psychiatric facilities.

9

But, as set forth below, such hardships are not torture absent intent to inflict severe harm.

"[T]o constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering. An act that results in unanticipated or unintended severity of pain and suffering is not torture." 8 C.F.R. § 1208.18(a)(5). Because "torture does not cover negligent acts or harm stemming from a lack of resources," "detention under substandard conditions in . . . prisons would not constitute torture," absent evidence that authorities "are *intentionally and deliberately* creating and maintaining such prison conditions *in order to inflict torture*." *Matter of J-R-G-P-*, 27 I. & N. Dec. at 484 (quotation marks omitted). "The failure to maintain standards of diet, hygiene, and living space in prison does not constitute torture under the CAT unless the deficits are sufficiently extreme and are inflicted intentionally rather than as a result of poverty, neglect, or incompetence." *Pierre v. Gonzales*, 502 F.3d 109, 121 (2d Cir. 2007). But "[b]arbaric prison conditions might constitute torture if they cause severe pain or suffering and if circumstances indicate that the intent of the authorities in causing the severity of pain and suffering (over and above the discomforts incident to

10

confinement in that time and place) is to illicitly discriminate, punish, coerce confessions, intimidate, or the like." *Id.*

Lucce did not establish that conditions in prisons or psychiatric facilities are maintained with the specific intent to torture, as opposed to lack of resources, and while the record reflects that "the use of cruel, inhuman, and degrading treatment, *sometimes amounting to torture*, was widespread as a disciplinary measure throughout the prison system," CAR at 1069 (emphasis added), some instances of torture do not establish that torture is "more likely than not." While Lucce argues that his mental health will deteriorate in Haiti, such that he will "attract attention" due to his "divergent" behavior, which will increase his likelihood of being detained or being singled out for torture in detention, Petitioner's Br. at 51 (quotation marks omitted), he does not support this conclusion and he testified that he was not taking any medications for his mental-health conditions. "[A]n alien will never be able to show that he faces a more likely than not chance of torture if one link in the chain cannot be shown to be more likely than not to occur. It is the likelihood of all necessary events coming together that must more likely than not lead to torture, and a chain of events cannot be more likely than its least

11

likely link." *Savchuck v. Mukasey*, 518 F.3d 119, 123 (2d Cir. 2008) (quotation marks omitted).

Finally, Lucce argues that the agency failed to aggregate his theories of future torture and only assessed each threat individually. However, as discussed above, substantial evidence supports the agency's conclusions that each of Lucce's theories of future torture was speculative (that Baz Pilate would know of his return and seek him out, that he would be misidentified as a gang member, and that he would be detained) and a claim based only on detention conditions would not satisfy the intent requirement for a CAT claim. The IJ explicitly stated that he considered these claims in the aggregate and reasonably found that they failed to meet the "more likely than not" threshold given that all the fears were speculative or the feared harm would not meet the intent requirement in the torture definition. *See Mu-Xing Wang*, 320 F.3d at 144 n.20 (explaining that more likely than not means "there is greater than a fifty percent chance . . . that [the applicant] will be tortured"). Lucce argues that the agency did not sufficiently explain its conclusion, but the agency considered the material evidence and whether the fears were sufficiently concrete, and Lucce has not identified evidence that would compel a conclusion contrary to the IJ's or that would suggest that the IJ did not

consider the risks cumulatively. *See Xiao Ji Chen*, 471 F.3d at 336 n.17; *Quintanilla-Mejia*, 3 F.4th at 592 ("Because the agency's conclusion finds support in record evidence, [petitioner] cannot secure CAT relief by pointing to conflicting evidence that might support—but not compel—a different conclusion.").

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court